[Cite as *Brecksville v. Sadaghiani*, 2021-Ohio-2443.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF BRECKSVILLE,  :

    Plaintiff-Appellee,  :

                                       No. 109992

    v.  :

SHIREEN D. SADAGHIANI,  :

    Defendant-Appellant.  :

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 15, 2021

Criminal Appeal from the Garfield Heights Municipal Court
Case Nos. CRB-1800302, CRB-1800303, and CRB-1800304

### *Appearances:*

Sergio DiGeronimo, *for appellee.*

Rick L. Ferrara, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Shireen Sadaghiani ("Sadaghiani"), appeals from the trial court's judgment, rendered after a bench trial, finding her guilty of one count each of making a false alarm, aggravated menacing, and telecommunications harassment, and sentencing her to 180 days in jail,

suspended; a $250 fine; and one year of inactive probation.  For the reasons that follow, we affirm.

## I.  Background

{¶ 2}  On February 9, 2018, the city of Brecksville charged Sadaghiani in Garfield Hts. M.C. No. CRB-1800302 with one count of making a false alarm in violation of Brecksville Codified Ordinances 509.07(a)(3); in Garfield Hts. M.C. No. CRB-1800303 with one count of aggravated menacing in violation of Brecksville Codified Ordinances 537.05(a); and in Garfield Hts. M.C. No. CRB-1800304 with one count of telecommunications harassment in violation of Brecksville Codified Ordinances 537.10(a)(6).  All counts were first-degree misdemeanors.

{¶ 3}  After Sadaghiani failed to appear at the arraignment set for February 21, 2018, the trial court rescheduled the matter for a second arraignment on March 21, 2018.  Sadaghiani again failed to appear, and the court issued a warrant for her arrest.  On February 18, 2020, counsel for Sadaghiani entered a notice of appearance and not guilty plea on Sadaghiani's behalf, and advised the court that "Defendant waives all time limitations under the Ohio Rules of Criminal Procedure."  In August 2020, the matter proceeded to a bench trial, where the following evidence was adduced.

{¶ 4}  Raymond Voldan ("Voldan") testified that he met Sadaghiani in 2011, when she was dating his friend James Zambataro, Jr. ("James Jr.").  Voldan and James Jr. lived in a duplex — James Jr. upstairs and Voldan downstairs.

Voldan said that Sadaghiani would sometimes visit him, and he gave her his cell phone number.

**{¶ 5}** Voldan testified that Sadaghiani began sending him harassing text messages in 2011, after the relationship between Sadaghiani and James Jr. ended. Voldan admitted that he initially replied to Sadaghiani's texts, but said he stopped responding because the harassment, which continued for years, was so constant. Voldan said that he finally decided to report the harassing texts to the police in 2017 because Sadaghiani had started making threats about his girlfriend and very young son.

**{¶ 6}** Voldan testified that exhibit No. 1 was a screenshot from his cellphone of messages received on August 18, 2017, from phone number (440) 879-7971. Voldan said he recognized the number as one used previously by Sadaghiani to send harassing texts. The texts stated, "Your life is getting ruined you fat f***!", "You are going to be murdered," "Tick tock," "Just waot[sic]," "Laugh now," "Cry later," and "Fatty." Voldan testified that he knew the messages came from Sadaghiani because they contained the same words and phrases she had used in other texts. He said she often called him a "fat f***," used the phrase "tick tock," and that she often texted messages like "we know where you work, we know this we know that."

**{¶ 7}** Voldan testified that exhibit No. 2 was a screenshot from his cellphone of a picture and text messages received from phone number (440) 638-1358 on September 1, 2017. Voldan said that he likewise recognized this number

as one that often appeared through the years in the harassing texts from Sadaghiani. Voldan testified that the screenshot in exhibit No. 2 was a picture of a male holding his genitalia and standing in the upstairs bathroom of the duplex where he and James Jr. used to live. The picture was accompanied by texts stating, "Burn in hell," "We know where you work," and "Monday morning your job will find out what a drug addict junkie you are." Voldan testified that the threat about his workplace "came true" because someone sent an email to his employer stating that he was rude and smelled like marijuana.

{¶ 8} Upon questioning by the court, Voldan confirmed that although Sadaghiani used various applications to block her cellphone number and make it appear the texts were coming from other numbers, he recognized the language of the texts and knew they were coming from her. On cross-examination, Voldan confirmed that the harassing texts came from Sadaghiani:

Q.     And what number did she use?

A.     There's so many phone numbers, sir, I couldn't tell you.

Q.     Well, you cannot, again the judge asked you the question, you don't know that she sent you these texts, do you?

A.     Oh, I know it, sir.

Q.     How do you know?

A.     Because nobody harasses somebody for a decade.

Q.     Okay. Did she use her name in this?

A.     She doesn't need to.

Q.     Did she use a number you know is associated with her?

A.      She's smart, she uses these apps.

Q.      So the answer is you're guessing at this point?

A.      No, sir, this is not a guess.  This is her.

Q.      You have no record that she used these phone numbers, correct?

A.      I know how she speaks.  She's done this to my other friends, and these are the exact same phrases; whether it's burn in hell or you will be murdered or tick tock, they all come up to all of our cell phones.

(Tr. 26-27.)

{¶ 9}   With respect to the making-a-false-alarm charge, Brecksville police detective Christopher Grimm testified that in August 2017, he began investigating false alarm calls made to the Brecksville Police Department.  He said the department had received calls on August 5, 6, 18, 20, and 27, 2017, all coming from the same blocked number and what appeared to be the same female caller.  All the calls reported a disturbance at the same address on Tamarack Trail in the city of Brecksville.  Det. Grimm testified that on all five occasions, Brecksville police were dispatched to the home on Tamarack Trail, and each time, they determined that the call was unfounded.

{¶ 10} The making-a-false-alarm charge in CRB-100302 related to the call made on August 18, 2017, by the same woman, who reported that a man by the name of James Zambataro was threatening her.  The woman refused to give her name or contact information, however, and immediately hung up.  Det. Grimm testified that the police were aware of the Zambataros' address as a result of the

earlier false alarm calls. He said that the owners of the home, James and Janet Zambataro, were in bed when the police arrived. They told the police they had no idea why the police had responded to their home because they had not called and there was nothing untoward occurring at the home.

{¶ 11} After the dispatcher who took the August 20, 2017 call did a *57 trace on the call, Det. Grimm subpoenaed AT&T, asking for records relating to the calls. Louis Williams, a senior investigator of asset protection at AT&T and custodian of the records, testified that exhibit No. 3, AT&T records produced in response to Det. Grimm's subpoena, demonstrated that a call was made on August 18, 2017, at 9:38 p.m. to the Brecksville police department, and that the call, which lasted approximately 18 seconds, originated from number (305) 563-1250.

{¶ 12} Det. Grimm put the number into a law enforcement database and learned that it belonged to Sadaghiani. He then subpoenaed Pinger, Inc. ("Pinger") for information related to the various numbers used in the texts to Voldan. He testified that exhibit No. 4 was Pinger's response to the subpoena and showed the IP address for an account that included the number (440) 638-1358, the number that appeared on the September 1, 2017 text to Voldan.

{¶ 13} Det. Grimm testified that he then put the IP address from Pinger into an open-source database, which identified Charter Communications, Inc. ("Charter") as the carrier. He testified that exhibit No. 5 was Charter's response to

his subpoena, and showed that the IP address was for an account for customer Shireen Sadaghiani, with the phone number (305) 563-1250 and a Florida address.

{¶ 14} Det. Grimm testified that his conclusion, after reviewing the results of his investigation, was that the texts to Voldan, as reflected on the screenshots of his cellphone on exhibit Nos. 1 and 2, came from the account owned by Sadaghiani. Det. Grimm testified further that the false alarm call made to the Brecksville Police Department on August 18, 2017, came from the same account. He said that he called the (305) 563-1250 number and spoke with Sadaghiani, who would neither confirm nor deny that the number belonged to her.

{¶ 15} On cross-examination, Det. Grimm testified that he did not know if James Jr. ever lived at his parents' home on Tamarack Trail. He acknowledged that during one of the calls to the police department, the female caller stated that James Jr. drove a black pickup truck, which the police subsequently learned was true. Det. Grimm testified that he did not recall, however, whether the truck was registered at the Tamarack Trail address. Det. Grimm testified that Sadaghiani told him that she had a restraining order against James Jr. from another jurisdiction, and that he was continuing to harass her in violation of the order. Det. Grimm said that Sadaghiani never followed up with him about this allegation, however. He testified further that James Jr. never appeared for an interview, despite the detective's request that he do so.

**{¶ 16}** The trial court subsequently found Sadaghiani guilty of all offenses as charged, and sentenced her to 180 days in jail, suspended; a $250 fine, and inactive probation for one year. This appeal followed.

## II. Law and Analysis

### A. Ineffective Assistance of Counsel

**{¶ 17}** In her first assignment of error, Sadaghiani contends that she was denied effective assistance of counsel.

**{¶ 18}** To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable performance and that he or she was prejudiced by that deficient performance, such that, but for counsel's error, the result of the proceedings would have been different. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In short, counsel's errors must be so serious as to render the result of the trial unreliable. In evaluating a claim of ineffective assistance of counsel, a court must be mindful that there are countless ways for an attorney to provide effective assistance in a given case, and it must give great deference to counsel's performance. *Strickland* at 689.

### 1. Speedy Trial

**{¶ 19}** Sadaghiani first contends that she was denied effective assistance of counsel because counsel did not move for dismissal on speedy trial grounds.

{¶ 20} R.C. 2945.71(B)(2) requires the state to bring a first-degree misdemeanor defendant to trial within 90 days after the person's arrest or the service of summons. That obviously did not happen here. It is apparent that Sadaghiani waived any speedy trial violation, however. The record contains a letter from Sadaghiani's counsel dated February 18, 2020, to the Garfield Heights Municipal Court that referenced the three cases in which Sadaghiani was charged. In the letter, counsel entered a notice of appearance and Sadaghiani's not guilty plea to the charges, and stated, "Defendant waives all time limitations imposed under the Ohio Rules of Criminal Procedure."

{¶ 21} Sadaghiani contends that the speedy trial requirements are found in the Ohio Revised Code and, therefore, counsel's reference to the Ohio Rules of Criminal Procedure cannot be interpreted as a waiver. This argument is specious. Sadaghiani cites no authority requiring that a speedy trial waiver must cite to the Ohio Revised Code in order to be effective. It is apparent that Sadaghiani, through counsel, intended to waive "all time limitations" regarding her case.

{¶ 22} Furthermore, even assuming that counsel's notice was not a waiver, Sadaghiani fails to acknowledge that on March 27, 2020, Governor Mike DeWine signed into law Am.Sub.H.B. No. 197, which immediately tolled, retroactive to March 9, 2020, all statues of limitations, time limitations, and deadlines in the Ohio Revised Code and the Ohio Administrative Code until the expiration of Executive Order 2020-01D or July 30, 2020, whichever was sooner. *In re Tolling of Time Requirements Imposed by Rules Promulgated by Supreme Court & Use of*

*Technology*, 158 Ohio St.3d 1447, 2020-Ohio-1166, 141 N.E.3d 974. Thus, the speedy trial time for Sadaghiani ran from February 18, 2020, when counsel entered a notice of appearance, until March 9, 2020, for a total of 19 days. It was then tolled until July 30, 2020. It then ran from July 30, 2020, to August 18, 2020, the trial date, for another 19 days. Accordingly, the time elapsed was 38 days, not 184, as asserted by Sadaghiani. Trial counsel was therefore not ineffective for not moving at trial for dismissal based upon a speedy trial violation.

### 2. Subpoenaed Records from Pinger, Inc. and Charter Communications, Inc.

**{¶ 23}** Sadaghiani next contends that counsel was ineffective for not objecting to the admission of exhibit Nos. 4 and 5, subpoenaed records from Pinger and Charter, respectively. She contends that the business records were unauthenticated and that Det. Grimm was not qualified to testify to the authenticity of the documents. Accordingly, she contends the records were inadmissible hearsay and that defense counsel was ineffective for not objecting to their admission.

**{¶ 24}** Contrary to Sadaghiani's argument, the record reflects that defense counsel did indeed object to the admission of the exhibits, but the trial court overruled the objections, finding that the records were admissible under Evid.R. 803(6), the business records exception to the hearsay rule. (Tr. 114-117.)

**{¶ 25}** Furthermore, the record reflects that defense counsel objected to Det. Grimm's testimony about exhibit No. 1, AT&T's subpoena response, and in response to counsel's objection, the trial court ordered AT&T's custodian of

records to appear at trial and testify about exhibit No. 1. Defense counsel did not object to Det. Grimm's testimony about exhibit Nos. 4 and 5, however, although counsel questioned the detective on cross-examination about the documents. Counsel's strategic decision to forego objection and then cross-examine the detective does not amount to ineffective assistance of counsel. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-235, 818 N.E.2d 229, ¶ 146 (even debatable trial tactics and strategies do not generally constitute ineffective assistance of counsel).

{¶ 26} Sadaghiani's argument also fails because the records were authenticated as business records and properly admitted under Evid.R. 803(6). Evid.R. 901(A) governs the authentication of evidence. "The threshold for admission is quite low, as the proponent need only submit 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *State v. Williams,* 8th Dist. Cuyahoga No. 106563, 2018-Ohio-4612, ¶ 26, quoting Evid.R. 901(A). To qualify for admission under Evid.R. 803(6), a business record must be one regularly recorded in a regularly conducted activity; a person with knowledge of the act or event recorded must have made the record; the record must have been recorded at or near the time of the act or event; and a foundation for the record must be laid by the custodian of the record or by some other qualified witness. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171.

{¶ 27} Both exhibit Nos. 4 and 5 contained certifications from the custodian of records at the respective companies that produced the records. With

respect to exhibit No. 4, the records produced by Pinger, Heather Manfre, a legal compliance manager at Pinger, provided a signed certification in which she declared, under the penalty of perjury, that she was the custodian of records with personal knowledge of Pinger's business filing record system, and that the records prepared in response to the subpoena were true and accurate copies of records made at or near the time of the occurrence of the event by a person with knowledge of the event, and in the course of Pinger's regularly conducted business activity.

{¶ 28} Likewise, regarding exhibit No. 5, Moudine Armstrong, a senior paralegal at Charter, provided a signed declaration in which she declared, under penalty of perjury and as custodian of the records, that she was familiar with Charter's billing and customer records, and that the records submitted in response to Det. Grimm's subpoena were prepared in Charter's ordinary course of business and contemporaneously with the recorded activity.

{¶ 29} We agree with Sadaghiani that Det. Grimm could not authenticate the records because he was neither the records custodian nor "some other qualified witness" with knowledge of the record-keeping systems at either company. Evid. R. 803(6). Manfre and Armstrong's certifications, however, were sufficient to authenticate the phone records provided by Pinger and Charter.

{¶ 30} This case is similar to *Chagrin Falls v. Ptak*, 8th Dist. Cuyahoga No. 109342, 2020-Ohio-5623, in which the defendant argued that the trial court had improperly admitted his cell phone records without sufficient authentication. This court rejected the argument because a detective testified at trial that he had

obtained the defendant's cell phone records through a court-ordered subpoena to AT&T, and that the records were accompanied by a certification of authenticity from an AT&T records custodian. *Id.* at ¶ 21. This court found that it was therefore unnecessary for the city to elicit additional testimony from a records custodian, and that the cellphone records were properly admitted. *Id.*

{¶ 31} As in *Ptak*, we find that because the records from Pinger and Charter Communications were accompanied by declarations from the respective custodians of records that the records were authentic and responsive to the subpoena requests, it was not necessary for the city to produce a records custodian at trial to elicit testimony about the records' authenticity. The records were properly authenticated and admitted under Evid.R. 803(6). Accordingly, defense counsel was not ineffective for not objecting to their admission.

### 3. Det. Grimm's Hearsay Testimony About the False Alarm Calls

{¶ 32} Sadaghiani next contends that because Det. Grimm never heard the calls to the Brecksville Police Department, counsel was ineffective for not objecting to his hearsay testimony about the substance of the calls. Sadaghiani's argument has no merit.

{¶ 33} Det. Grimm testified to the substance of the false alarm call made on August 18, 2017, in response to questioning by the trial judge. He read for the judge the summary written by the dispatcher who took the call at 9:53 p.m.: "Female caller stated Jim Zambataro is threatening her and it is not stopping. He threatened her life. Would not give a name and hung up." (Tr. 105.) We do not

find counsel's failure to object to Det. Grimm's response to direct questioning by the judge to be ineffective.

{¶ 34} Moreover, it appears that counsel's failure to object to Det. Grimm's testimony on direct examination that the calls involved a "domestic situation" was a strategic decision. On cross-examination, counsel questioned Det. Grimm about the dispatcher's notes regarding the August 18, 2017 call and confirmed with the detective that the report contained no mention of a "domestic situation," but instead indicated that the caller was complaining about being threatened by "James Zambataro." (Tr. 85-86.) Counsel then questioned Det. Grimm about whether James Jr. lived at the Tamarack Trail address; whether the detective was aware that in one of the calls, the caller had described James Jr. as driving a black pickup truck; and whether James Jr.'s pickup truck was registered at that address. Counsel also questioned the detective about the restraining order Sadaghiani had obtained against James Jr. Counsel then asked Det. Grimm, "If in fact Jim Zambataro was threatening her, threatened her life and was not stopping, the allegations she made in the call — and by making that call she was reporting a truthful statement, correct?" (Tr. 89-90.)

{¶ 35} Not objecting to Det. Grimm's testimony on direct examination allowed counsel to question him on cross-examination about the substance of the calls in order to prove the defense theory — that Sadaghiani's calls to the Brecksville Police Department were not false alarms because James Jr. was actually threatening her. Counsel's decision to not object to Det. Grimm's

testimony on direct examination was a trial strategy that was within his discretion. As stated earlier, trial tactics and strategies do not constitute a denial of effective assistance of counsel. *State v. Gooden*, 8th Dist. Cuyahoga No. 88174, 2007-Ohio-2371, ¶ 38, citing *State v. Clayton,* 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶ 36} The first assignment of error is overruled.

## III. Venue

{¶ 37} In her second assignment of error, Sadaghiani contends that her convictions for telephone harassment and aggravated menacing against Voldan should be reversed because the city failed to prove venue.

{¶ 38} Venue refers to the "'appropriate place of trial for a criminal prosecution as between different geographical subdivisions within a state.'" *State v. Lenard,* 8th Dist. Cuyahoga No. 108646, 2020-Ohio-1502, ¶ 32, quoting *State v. Morrar*, 12th Dist. Madison No. CA2013-08-027, 2014-Ohio-3663, ¶ 9. The right to proper venue is codified in R.C. 2901.12(A), which provides that the "trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." As relevant to this case, R.C. 2901.12(I)(1) further provides that

> [w]hen the offense involves a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, the offender may be tried in any jurisdiction containing any location of the computer, computer system, or computer network of the victim of the offense, in any jurisdiction from which or into which, as part of the offense, any writing, data, or image is disseminated or transmitted by means of a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or

information service, or in any jurisdiction in which the alleged offender commits any activity that is an essential part of the offense.

{¶ 39} Although it is not a material element of the offense charged, venue is a fact that must be proved in criminal prosecutions unless waived by the defendant. *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). The standard of proof is beyond a reasonable doubt, although venue need not be proved in express terms so long as it is established by all the facts and circumstances of the case. *Id.*

{¶ 40} The city established venue when Det. Grimm responded affirmatively to the following question by the prosecutor: "Sir, these communications, did they occur in the city of Brecksville, the county of Cuyahoga, and the State of Ohio?" (Tr. 84.) The record reflects that the question referred to both the harassing texts sent to Voldan and the false alarm calls to the Brecksville Police Department, thus establishing venue for all the offenses with which Sadaghiani was charged.

{¶ 41} The second assignment of error is therefore overruled.

## IV. Sufficiency of the Evidence

{¶ 42} In her third assignment of error, Sadaghiani contends that there was insufficient evidence to support her convictions.

{¶ 43} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to

examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543, 2001-Ohio-112, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-829, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**A. Making A False Alarm**

{¶ 44} Sadaghiani was convicted of making a false alarm in violation of Brecksville Codified Ordinances 509.07(a)(3), which states that "[n]o person shall [r]eport to any law enforcement agency an alleged offense or other incident within its concern, knowing that the offense did not occur."

{¶ 45} Sadaghiani argues that the city did not present sufficient evidence to support her conviction of this offense because it did not present a witness who actually heard the phone call on August 18, 2017. She contends that although Det. Grimm testified that the call "involved a domestic situation," he had no actual knowledge of what was said on the call and, therefore, the city failed to present substantive evidence regarding the elements of the offense.

{¶ 46} She further contends that even if the city presented substantive evidence of the call through the dispatch notes, the city did not present evidence regarding any "alleged offense or other incident" about which the caller made a

false statement. She also contends that the city did not present evidence that she knowingly called in false information. Sadaghiani's arguments are without merit.

{¶ 47} The city presented evidence, through Det. Grimm's testimony, that the Brecksville Police Department received five separate telephone calls concerning a home on Tamarack Trail in the city of Brecksville. Each time, the caller refused to give her name and the number from which the calls were made was blocked. And each time the police were dispatched to the home, they determined there was no disturbance at the home and the call was unfounded.

{¶ 48} Det. Grimm offered evidence about the false nature of the August 18, 2017 call through exhibit No. 6, the dispatcher's Radio Log Report about the call, which stated: "Female caller stated Jim Zambataro is threatening her and it is not stopping, he threatened her life. Would not give a name and hung up." (Tr. 111-112.) Det. Grimm testified that the dispatcher's handwritten note on the report stated, "At least 3 phone calls from this female in last 2-2-1/2 weeks."

{¶ 49} Det. Grimm testified that as with the other unfounded calls to the Brecksville Police Department, when the police arrived at the Zambataros' home on Tamarack Trail after the August 18, 2017 call, they learned the call was unfounded. The residents of the home were in bed when the police arrived, and upon being awakened, told the police they had not called and there was no disturbance that required police intervention.

{¶ 50} Det. Grimm testified that he learned from AT&T's response to his subpoena that the August 18, 2017 call was made from phone number (305) 563-

1250.  Likewise, Louis Williams, a senior investigator at AT&T, testified that the call made to the Brecksville Police Department on August 18, 2017, at 9:38 p.m. lasted only about 18 seconds and originated from phone number (305) 563-1250. Det. Grimm testified that he put the number into a law enforcement data base and learned it belonged to Sadaghiani.  He testified that he then subpoenaed records from Pinger and Charter, and after reviewing the information contained in these records, concluded that the call to the Brecksville Police Department on August 18, 2017, was made by Sadaghiani.

{¶ 51} Construing this evidence in a light most favorable to the prosecution, we find that the city produced sufficient evidence to prove each element of the making a false alarm offense.  The city produced evidence that the August 18, 2017 call was made by Sadaghiani, the "alleged offense or other incident" was a threat from James Zambataro, and the alleged offense or incident did not occur.  Further, in light of the city's evidence that the police department had received three calls prior to the August 18, 2017 call, all from the same woman who each time refused to give her name, and all of which proved to be unfounded, the city produced sufficient evidence that Sadaghiani knowingly made a false alarm call on August 18, 2017.

### B.  Telecommunications Harassment and Aggravated Menacing

{¶ 52} Sadaghiani was convicted of telecommunications harassment in violation of Brecksville Codified Ordinances 537.109(a)(6), which states that

> [n]o person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be

made from a telecommunications device under the person's control, to another, if the caller knowingly makes any comment, request, suggestion, or proposal to the recipient of the telecommunication that is threatening, intimidating, menacing, coercive, or obscene with the intent to abuse, threaten, or harass the recipient[.]

{¶ 53} She was also convicted of aggravated menacing in violation of Brecksville Codified Ordinances 537.05(a), which provides that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn or a member of the other person's immediate family." Both offenses were directed against Voldan.

{¶ 54} Sadaghiani contends the city did not produce sufficient evidence to support the aggravated menacing conviction because there was no evidence that Voldan believed she would cause him serious physical harm. We disagree.

{¶ 55} Voldan testified that he was "alarmed" after he received texts from Sadaghiani telling him, "You are going to be murdered. Tick tock. [Your] life will be ruined." (Tr. 12.) He said that although he had received other harassing texts from Sadaghiani through the years, these texts caused particular "fear and anxiety." (Tr. 13.) Voldan's testimony that he was fearful and anxious after receiving texts that threatened to kill him is sufficient to demonstrate that he believed Sadaghiani would cause him serious physical harm.

{¶ 56} Sadaghiani next contends that the evidence was insufficient to support both the aggravated menacing and telecommunication harassment

convictions because the city did not present sufficient evidence that she was the individual who sent the texts. Again, we disagree.

{¶ 57} Voldan testified consistently on direct examination, cross-examination, and in response to questioning from the judge that he knew the texts came from Sadaghiani because the harassment had been ongoing for years, and he recognized the words and phrases that she used in the texts. In addition to Voldan's testimony, Det. Grimm testified about his investigation; the responses from AT&T, Pinger, and Charter to his subpoena requests; and his conclusion in light of the results of his investigation that Sadaghiani both sent the threatening texts to Voldan and made the false alarm calls to the Brecksville Police Department. Construed in a light most favorable to the prosecution, this evidence is sufficient to convince a reasonable factfinder that Sadaghiani sent the texts to Voldan.

{¶ 58} Sadaghiani contends this evidence was insufficient to establish her identity, however, because Voldan's testimony established only that he "suspected" that she was sending the texts. She also contends that Det. Grimm's testimony that the same individual sent the texts and made the false alarm calls is not credible because the documents from Pinger indicated that the Pinger account was created on September 2, 2017, *after* the harassing texts were sent to Voldan.

{¶ 59} Sadaghiani's arguments are misplaced. "'In a sufficiency analysis, we do not consider the credibility of witnesses or whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support

a conviction.'" *State v. Philpott*, 8th Dist. Cuyahoga Nos. 109173, 109174, and 109175, 2020-Ohio-5267, ¶ 60, quoting *State v. Chambers*, 10th Dist. Franklin No. 13AP-1093, 2014-Ohio-4648, ¶ 17. Voldan and Det. Grimm's testimony, if believed, is sufficient to establish that Sadaghiani sent the threatening texts. And even without Det. Grimm's testimony, Voldan's testimony alone, if believed, is sufficient to establish that Sadaghiani sent the texts.

{¶ 60} The third assignment of error is overruled.

## V. Manifest Weight of the Evidence

{¶ 61} In her fourth assignment of error, Sadaghiani contends that her convictions are against the manifest weight of the evidence.

{¶ 62} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Lenard*, 8th Dist. Cuyahoga No. 105998, 2018-Ohio-3365, ¶ 51, citing *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997).

{¶ 63} Sadaghiani contends that her convictions were against the manifest weight of the evidence because even if the evidence established that she made the calls to the Brecksville Police Department, the calls were not false because there

was a "reasonable probability" that James Jr. was harassing her. She points to the restraining order against him, as well as his failure to respond to Det. Grimm's request for an interview, as evidence that the allegations she made in the calls were truthful. She also contends that Voldan is a friend of James Jr.'s and, therefore, his testimony was biased. She contends that the trial court ignored the evidence that contravened her guilt, including Voldan's bias, and convicted her on a weak evidentiary record.

{¶ 64} We find that Sadaghiani's convictions are not against the manifest weight of the evidence. The evidence established that she made the calls to the Brecksville Police Department, and that all of the calls were unfounded. The evidence also established that the number from which the calls were made was blocked. As the trial judge, as the finder of fact, recognized when she found Sadaghiani guilty of making the false alarm call on August 18, 2017, an individual who truly feels threatened would not block their telephone number from the police nor hang up without giving the police the necessary information to help them. (Tr. 129.)

{¶ 65} With respect to Voldan's testimony, we are mindful that determinations regarding the credibility of witnesses and the weight of the evidence rest primarily with the trier of fact because the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections — observations that are critical to determining a witness's credibility. *State v. Wilkinson*, 8th Dist. Cuyahoga No. 100859, 2014-Ohio-5791, ¶ 39. The

trier of fact may take note of any inconsistencies in the testimony and resolve them accordingly; it is free to accept or reject any or all of the testimony of any witness. *Id.*, citing *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16.

{¶ 66} The trial judge listened to Voldan's testimony and apparently concluded that his testimony was credible, despite his friendship with James Jr. We find nothing in the record that suggests a different conclusion.

{¶ 67} A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d 380 at 388, 678 N.E.2d 541. This is not that exceptional case. The fourth assignment of error is therefore overruled.

## VI. Other Acts Evidence

{¶ 68} In her fifth assignment of error, Sadaghiani contends that the trial court erred by admitting evidence of her other bad acts in violation of Evid.R. 404(B). Specifically, she objects to Voldan's testimony that he had been receiving harassing and threatening text messages from Sadaghiani "over the course of years" prior to the 2017 texts.

{¶ 69} This court reviews a trial court's decision regarding the admission of evidence for an abuse of discretion. *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 32, citing *State v. Conway*, 100 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62. Accordingly, our inquiry is limited to whether the trial court's evidentiary rulings were unreasonable, arbitrary, or

unconscionable. *Sheline* at *id.*, citing *State v. Barnes*, 94 Ohio St.3d 21, 23, 759 N.E.2d 1240 (2002).

**{¶ 70}** "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 12778, ¶ 15. Nevertheless, "evidence of other crimes, wrongs, or acts of an accused tending to show the plan with which an act is done may be admissible for other purposes, such as those listed in Evid. R. 404(B), to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident." *Id.* at ¶ 19. "Hence, the rule affords broad discretion to the trial judge regarding the admission of other acts evidence." *Id.* at ¶ 17.

**{¶ 71}** In deciding whether to admit other acts evidence, trial courts should conduct a three-step analysis:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid. R. 403.

*Id.* at ¶ 20.

**{¶ 72}** Voldan testified that he knew the August 18, 2017 and September 1, 2017 text messages were from Sadaghiani because he recognized the phone

numbers on the texts as numbers Sadaghiani had previously used to send harassing texts, and he recognized the words and phrases in the texts. Considering the first step of the three-step analysis, we find that Voldan's testimony was relevant because it tended to show the identity of person who sent the texts.

{¶ 73} Regarding the second step — whether the evidence was presented to prove the accused's character in order to show the conduct was in conformity with that character — the city did not offer Voldan's testimony to show that sending harassing texts was in conformity with Sadaghiani's character. Rather, Voldan's testimony was offered to prove Sadaghiani's identity as the sender of the texts.

{¶ 74} Finally, the probative value of Voldan's testimony was not outweighed by the danger of unfair prejudice. This was a trial to the bench, and as such, we presume the trial judge followed the rules of evidence and rendered a decision on the proper evidence. *State v. Atwater*, 8th Dist. Cuyahoga No. 107182, 2020-Ohio-484, ¶ 15. Sadaghiani has not pointed to anything that would lead us to conclude the trial court improperly considered Voldan's testimony for any purpose other than establishing the identity of the sender of the August 18 and September 1, 2017 text messages.

{¶ 75} Indeed, Sadaghiani concedes that the trial court admitted Voldan's testimony to establish identity, but asserts that the admission of the evidence was prejudicial error because the city never gave notice that it intended to use other acts testimony, in violation of Evid.R. 404(B). Sadaghiani contends that defense counsel "was left flatfooted and unable to defend" against Voldan's testimony that

he believed he had received harassing texts from Sadaghiani "over the course of years."

{¶ 76} "In criminal cases, the proponent of evidence to be offered under [Evid.R. 404(B)] shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown of the general nature of any such evidence it intends to introduce at trial." Evid.R. 404(B). Nevertheless, as indicated in the Staff Notes to the rule, the notice requirement "should not be construed to exclude otherwise relevant and admissible evidence solely because of a lack of notice, absent a showing of bad faith." *State v. Plevyak*, 11th Dist. Trumbull No. 2013-T-0051, 2014-Ohio-2889, ¶ 21.

{¶ 77} The city concedes that it did not give formal notice of its intent to use other acts evidence at trial but contends there was no bad faith in its failure to give notice. We agree. Under the city's open discovery policy, all of the city's evidence is provided to a defendant to review in preparation for trial. Indeed, as defense counsel acknowledged at trial, he received over 5,000 pages of discovery from the city. (Tr. 93.) Sadaghiani thus had access to the police reports, including a report taken by the Brecksville Police Department on February 15, 2018, from Voldan. In the report, the police officer noted that Voldan "stated the harassment and threats have been happening since late 2011" and "he has been mostly ignoring the calls and texts for the last years." In light of this information, Sadaghiani could not have been surprised that Voldan testified at trial that the harassing texts had been occurring for years. Accordingly, we cannot conclude that the city's failure to

give notice is reversible error. *Cleveland v. Lowery*, 8th Dist. Cuyahoga No. 103722, 2016-Ohio-5626, ¶ 30 (city's failure to give prior notice of its potential use of Evid.R. 404(B) evidence not reversible error where the witness's name and testimony to which the defendant objected were disclosed to the defendant in the police report that was provided to the defendant prior to trial).

{¶ 78} The fifth assignment of error is overruled.

{¶ 79} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, A.J., and
EILEEN A. GALLAGHER, J., CONCUR