[Cite as *State v. Covington*, 2025-Ohio-1720.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240099 |
| | | TRIAL NO. 23/CRB/5512 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| RONALD COVINGTON, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 5/14/2025 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *State v. Covington*, 2025-Ohio-1720.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240099 |
|  |  | TRIAL NO. | 23/CRB/5512 |
| Plaintiff-Appellee, | : |  |  |
| vs. | : |  |  |
| RONALD COVINGTON, | : | *O P I N I O N* |  |
| Defendant-Appellant. | : |  |  |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 14, 2025

*Emily Smart Woerner*, City Solicitor, and *William T. Horsley*, Chief Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**MOORE, Judge.**

{¶1}   Defendant-appellant Ronald Covington appeals the judgment of the Hamilton County Municipal Court, after he was convicted, following a jury trial, of violating the terms of a civil protection order.  In five assignments of error, Covington challenges the fairness of his trial, the court's evidentiary rulings, and the weight of the evidence underlying his conviction.  After considering Covington's arguments and reviewing the record, we affirm the trial court's judgment.

## I.   *Factual and Procedural History*

{¶2}   On January 12, 2023, the Hamilton County Municipal Court issued an ex parte civil stalking protection order against Covington, which prohibited him from contacting or visiting the complaining witness ("T.S.").  On April 6, 2023, T.S. filed a complaint against Covington, alleging Covington contacted her through multiple anonymous phone numbers and visited her home in violation of R.C. 2919.27.

{¶3}   Prior to trial, Covington filed a motion in limine to prevent the State from introducing anonymous text messages sent prior to the incident date referenced in the complaint.  Covington insisted that the additional messages were both inadmissible character evidence and irrelevant as to whether he violated the protection order "on or about" April 6.  The court denied Covington's motion and permitted the State to introduce texts sent before the incident referenced in the complaint for the purpose of identifying Covington as the sender of the anonymous texts on April 6.

{¶4}   Between the completion of jury selection and commencement of opening arguments, Covington alerted the court that the State had failed to disclose material evidence.  Covington alleged that the State had received sign-in sheets and pay stubs from his employer for the week of April 6, the time of the incident in the

complaint, and that the State's failure to share this information prevented his counsel from presenting an adequate defense. The State insisted that it did not intend to use the documents, and that the information was not exculpatory. After chastising the State for not producing these documents ahead of trial, the court denied Covington's motion for a mistrial.

**{¶5}** At trial, the State called three witnesses: T.S. and two police officers who helped file the complaint and serve Covington with the protection order. Covington's sole witness was one of his coworkers.

**{¶6}** T.S. testified about her relationship with Covington. She recalled that when she attempted to end the relationship, Covington threatened to kill himself. She also explained that she had only felt safe to leave Covington after he had become bed-ridden from an illness. T.S. testified that after the relationship ended Covington would constantly text, call, or message her social-media accounts. In January 2023, T.S. was granted a protection order, which prohibited Covington from contacting or visiting her.

**{¶7}** T.S. testified that despite the protection order she believed Covington continued to contact her. The State introduced printed screenshots of text messages sent to T.S. as well as a call log. The screenshot of the call log showed that a number registered to Covington's mother called T.S. more than ten times in one day. The 56 screenshots documented messages from 42 unknown numbers. T.S. testified that the messages mentioned nicknames Covington had for her as well as facts about her personal life, including information about her family, past intimate partners, and job. T.S. also received seven sexually-explicit photographs of herself, that she believed Covington had taken when they were dating.

**{¶8}** One of the messages stated "f*** that order, if I was a psycho an order

4

wouldn't stop [me] anyway." T.S. believed that Covington was the sender, because the texts referenced facts about her personal life, expressed knowledge of the protective order, and included intimate photos.

**{¶9}** As the State was presenting its case-in-chief, Covington moved for a mistrial. At an in-chambers conference, Covington took issue with the State providing "courtesy copies" of three text message exhibits. The difference between the copies provided in discovery and the "courtesy copies" were that the courtesy copies now contained timestamps from April 5 and 6 respectively. Covington insisted that this late disclosure interfered with his ability to adequately prepare an effective defense. The court denied Covington's request for a mistrial but granted Covington a 24-hour continuance.

**{¶10}** When the proceedings resumed, T.S. recalled the events that prompted her complaint. T.S. explained that on April 5 at 9:10 a.m., she received texts criticizing her for leaving someone while they were sick. T.S. next recalled receiving two texts on April 6. The first was received at 7:54 a.m. and stated that the sender had driven by her home, did not see her car, and demanded to know her new address. The second came in at 9:40 a.m. from a different unknown phone number and reiterated that the sender had driven by T.S.'s home and had not seen her car. The sender then repeatedly stated that they were "burning with so much anger" and asked God to "please forgive me for what im (sic) about to do." T.S. recalled that she then filed the complaint seeking a protection order.

**{¶11}** Covington's sole witness, a coworker, testified that Covington was at work on the date of the complaint. The coworker recalled that from April 3 to April 7, she and Covington were required to complete new-hire orientation. Covington introduced copies of the employer's sign-in sheets, which showed that Covington

5

signed into work on April 5 at 10:15 a.m. and on April 6 at 8:15 a.m. The coworker explained that employees were prohibited from using their phones at work and they could not use the employer's WiFi. But, the coworker added that employees could keep their phones with them and could access the internet using their own cellular data services.

**{¶12}** At the end of trial, the jury found Covington guilty of violating the protection order, and the court sentenced him to serve 180 days in jail, with a time-served credit of 29 days.

## II.    Analysis

**{¶13}** On appeal, Covington raises five assignments of error. Covington argues that (1) the State's late disclosure of material evidence denied him the opportunity to have a fair trial, (2) and (3) the trial court erroneously admitted inadmissible and irrelevant evidence, (4) the cumulative effect of the errors at trial denied Covington the right to a fair trial, and (5) the court's judgment was against the manifest weight of the evidence. We consider these arguments in turn.

### A. Fair Trial

**{¶14}** In his first assignment of error, Covington asserts that the State's failure to provide the timestamped text messages and documents from Covington's employer denied him the opportunity to have a fair trial.

**{¶15}** Central to a defendant's right to due process is the duty of the prosecution to provide the accused with evidence material to his or her guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Failure to disclose exculpatory evidence infringes upon a defendant's right to a fair trial under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *State v. Long*, 2023-Ohio-132, ¶ 14 (1st Dist.). We review the trial court's decision on a

6

motion for a new trial following an alleged *Brady* violation de novo. *Id.* at ¶ 13.

**{¶16}** To establish a violation of *Brady*, a defendant must demonstrate (1) the evidence was favorable to the defendant, (2) the state suppressed the evidence, and (3) the defendant was prejudiced as a result. *State v. Brown*, 2024-Ohio-749, ¶ 30, citing *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). Under the *Brady* analysis, evidence is prejudicial if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. *Id.* at ¶ 30.

**{¶17}** The Ohio Supreme Court has determined that a *Brady* violation does not automatically occur when evidence is first disclosed at trial. *Id.* at ¶ 31, citing *State v. Iacona*, 93 Ohio St.3d 83, 100 (2001). Instead, the relevant question is whether the *Brady* material was disclosed to the defendant in time for its effective use at trial. *Iacona* at 100.

**{¶18}** Here, the late disclosure of the evidence at issue did not constitute a *Brady* violation. First, the State's delay in providing the timestamped text messages did not prejudice Covington. Covington had all texts the State planned to use at trial for five months before trial. And, after the updated copies were disclosed, Covington still had seven days to incorporate the texts into his trial strategy before he started his case in defense. Therefore, the State's delay in providing the timestamped texts was not a *Brady* violation.

**{¶19}** Similarly, the State's dilatory disclosure of documents related to Covington's employment after jury selection also was not a *Brady* violation. The State disclosed copies of sign-in sheets and pay stubs to Covington six days before the start of Covington's case in defense. So, Covington could have used the documents at trial. Covington's brief suggests that an earlier disclosure would have allowed his counsel to conclusively determine whether employees could have accessed the internet at work.

But nothing the State did kept Covington's trial counsel from completing this investigation, as Covington, after all, knew where he worked. Because the State's late production of the employment documents did not hinder Covington's ability to put on an effective defense, Covington was not prejudiced.

{¶20} Accordingly, Covington's first assignment of error is overruled.

### B. Prior Bad Acts

{¶21} In his second assignment of error, Covington asserts that the trial court erred when it allowed the State to introduce text messages beyond the incident date referenced in the complaint. Covington insists that these additional texts constitute impermissible "other acts" evidence in violation of Evid.R. 404(B). Covington also takes issue with the State's failure to give timely notice of its intention to use Evid.R. 404(B) evidence.

{¶22} We conduct a mixed review of the trial court's admission of other-acts evidence. *State v. Worley*, 2021-Ohio-2207, ¶ 117. Evid.R. 404(B)(1) prohibits the use of other-acts evidence to demonstrate that the accused had a propensity or proclivity to engage in the crime in question. *State v. Hartman*, 161 Ohio St.3d 214, 219 (2020). However, Evid.R. 404(B)(2) provides that other-acts evidence may be used for "other purposes," such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." While the party attempting to use the other-acts evidence is expected to provide the nonmoving party with notice of its intention to use Evid.R. 404(B) evidence, a court may excuse a lack of notice for good cause. Evid.R. 404(B)(3)(c). The admissibility of other-acts evidence is a question of law appellate courts review de novo. *Worley* at ¶ 117. However, we review the trial court's admissibility assessment, which weighs the probative value of evidence against the risk of undue prejudice in accordance with

8

Evid.R. 403(A), for an abuse of discretion. *Id.*

**{¶23}** When challenging the admissibility of other-acts evidence, courts engage in a three-step analysis:

'The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403.'

*State v. Knuff*, 2024-Ohio-902, ¶ 116, quoting *State v. Williams*, 2012-Ohio-5695, ¶ 19-20.

**{¶24}** Here, the texts were admissible other-acts evidence. The texts were relevant to establishing that Covington contacted T.S. on or about the incident date in the complaint. Because T.S. received the texts from an unknown number, the inclusion of additional messages was introduced for the permitted purpose of identifying Covington as the source. While the trial court's decision to introduce a voluminous record of texts may have posed a risk of prejudice, the probative value of the additional texts was not substantially outweighed by the threat of prejudice. *See State v. Barnett*, 2018-Ohio-4133, ¶ 50 (2d Dist.) (holding that the exclusion of sexually-explicit texts was appropriate where the content of the messages was immaterial to the proffering party's case.).

9

**{¶25}** Further, the State's failure to give notice of its intent to use other-acts evidence was appropriately excused by the trial court. As stated by the Staff Notes to the 2012 Amendment to Evid.R. 404(B), the purpose of the notice requirement is to allow parties the opportunity to adequately prepare. *See City of Brecksville v. Sadaghiani*, 2021-Ohio-2443, ¶ 77 (8th Dist.) (finding the prosecution's failure to give formal notice of its intent to use Evid.R. 404(B) evidence was ameliorated when it shared police reports that would be used to establish identity). Here, the trial court determined that the State shared the text messages five months in advance of trial, which gave Covington sufficient notice so he could adequately prepare.

**{¶26}** Therefore, the trial court did not err when it admitted text messages for the purpose of identifying Covington, nor did the court commit reversible error when it admitted the State's Evid.R. 404(B) evidence and excused the need for formal notice of the intent to use such evidence.

**{¶27}** Accordingly, Covington's second assignment of error is overruled.

### C. Irrelevant Evidence

**{¶28}** In his third assignment of error, Covington asserts that the court erred when it admitted the additional text messages, as they were not relevant to determining whether Covington violated the protection order "on or about April 6, 2023."

**{¶29}** We review a trial court's evidentiary rulings for an abuse of discretion. *Bender v. Durrani*, 2024-Ohio-1258, ¶ 53 (1st Dist.). For evidence to be admissible, it must be relevant, and its probative value must not be substantially outweighed by the danger of unfair prejudice. *Id*. at ¶ 57.

**{¶30}** A complaint may reference an approximate date for an offense, because generally the precise date is not a dispositive element of an offense. *State*

*v. Sellards*, 17 Ohio St.3d 169, 172 (1985). Unless the exact date and time are material to the elements of a crime, the failure to prove a temporal component of a crime is generally inconsequential. *State v. Leonard*, 2024-Ohio-2817, ¶ 12 (1st Dist.).

**{¶31}** As with our analysis of Covington's second assignment of error, we hold that the trial court did not err in admitting the text messages. Covington's argument that the texts from January, February, and March of 2023 are too far removed to classify as "on or about April 6" misinterprets the purpose of the additional text messages. As the trial court stated when it denied Covington's motion in limine, the texts were used for the sole purpose of identifying that "on or about" the occurrence date in the complaint, Covington violated the protection order. The trial court did not broadly interpret "on or about" to mean that a text from January could be read to violate the protection order in April.

**{¶32}** Additionally, Covington's argument that the multiple texts were substantially more prejudicial than probative is not persuasive. While the texts may have posed a risk of prejudice, it is not apparent from the record before this court that this risk outweighed the probative value the texts provided in identifying Covington as the sender.

**{¶33}** Accordingly, Covington's third assignment of error is overruled.

### D. Cumulative Error

**{¶34}** In his fourth assignment of error, Covington asserts that his prior three assignments of error had the cumulative effect of denying him a fair trial.

**{¶35}** A conviction shall be reversed where the cumulative effect of errors has the effect of depriving the defendant of a fair trial, even if no one individual error would

necessitate reversal. *Knuff*, 2024-Ohio-902, at ¶ 288. However, the doctrine of cumulative error is inapplicable where the errors are harmless or nonexistent. *Garry v. Borger*, 2023-Ohio-905, ¶ 33 (1st Dist.).

**{¶36}** After reviewing the record and finding no error in the trial court's actions complained of in Covington's assignments of error, we cannot say that Covington was denied a fair trial.

**{¶37}** Accordingly, Covington's fourth assignment of error is overruled.

### E. Manifest Weight

**{¶38}** In his fifth and final assignment of error, Covington asserts that his conviction was against the manifest weight of the evidence.

**{¶39}** When reviewing whether a conviction is against the manifest weight of the evidence, we assess the whole record, weigh all evidence and reasonable inferences, consider the credibility of the witnesses and conclude whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). While an appellate court considers credibility for a manifest-weight analysis, credibility determinations are initially made by the trier of fact, given their ability to view the witnesses and "their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Brown*, 2024-Ohio-2148, ¶ 17 (1st Dist.). Reversing a conviction on manifest-weight grounds is an extraordinary action reserved only for "the most 'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.* at ¶ 16, quoting *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. 1983), paragraph three of the syllabus.

**{¶40}** Here, Covington insists that his alibi witness was more credible than T.S. However, nothing in the record demonstrates that T.S. was not credible. The jury

was in the best position to make credibility determinations, and it deemed T.S. more credible. Based on the record before this court, we cannot conclude that Covington's conviction was against the manifest weight of the evidence.

**{¶41}** Accordingly, Covington's fifth assignment of error is overruled.

### *III.    Conclusion*

**{¶42}** In overruling each of Covington's five assignment of error, we affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **BOCK, J.,** concur.