[Cite as *State v. Spencer*, 2025-Ohio-3268.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

THOMAS B. SPENCER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 MA 0012

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2023 CR 00505

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Lynn Maro*, Mahoning County Prosecutor, *Atty. Ralph M. Rivera*, and *Atty. Kristie M. Weibling*, Assistant Prosecutors, for Plaintiff-Appellee

*Atty. Alexander Ugolini*, for Defendant-Appellant

Dated: September 8, 2025

**WAITE, J.**

{¶1}   Appellant was convicted by a jury on two counts of gross sexual imposition. The victim was a six-year-old girl.  Appellant was sentenced to 120 months in prison and was designated a Tier III Child Victim Offender.  Appellant raises four assignments of error on appeal.  He argues that the victim, who was eight years old at the time of trial, should have been found incompetent to testify.  The trial court held a voir dire of the child to determine her competency to testify.  The court's finding of competency complied with Evid.R. 601 and R.C. 2317.01, and Appellant's first assignment of error has no merit. Appellant further argues that the evidence at trial was both insufficient to convict him and that the conviction was against the manifest weight of the evidence.  The state produced eight witnesses at trial.  Both the victim and her brother were eyewitnesses to the sexual assault.  The remaining witnesses were very consistent in their testimony as to the circumstances of the crime and that Appellant was the perpetrator.  Although Appellant argues there were many inconsistencies in the testimony, none of the discrepancies involved material facts of the crime.  The record fully supports both the sufficiency and weight of the evidence, and Appellant's third and fourth assignments of error are not supported by the record.

{¶2}   Finally, Appellant argues that he should have been designated a Tier II sexual offender rather than a Tier III.  He contends that the trial court improperly used a prior attempted rape conviction from 2007 to increase the designation to Tier III.  He posits that a sexual assault offense committed under Megan's Law should not have been applied to enhance the sexual offender designation pursuant to the Adam Walsh Act.  The record shows that Appellant stipulated to a Tier III Adam Walsh designation and the 2007

attempted rape conviction, and conviction of a prior Tier III crime, elevated the designation of gross sexual imposition from a Tier II to a Tier III classification under the Adam Walsh Act. Due to this stipulation, Appellant's second assignment of error is also unpersuasive. None of Appellant's assignments of error have merit and the judgment of the trial court is affirmed.

Facts and Procedural History

{¶3} In March of 2023, Appellant sexually molested six-year-old victim M.L. while she was attending a bonfire at her mother's house. On June 20, 2023, Appellant was indicted on two counts of gross sexual imposition pursuant to R.C. 2907.05(A)(4), third degree felonies. The two counts involve the act of touching the victim's vagina and touching her buttocks. Appellant was scheduled for arraignment on August 1, 2023, but failed to appear and a bench warrant was issued. Appellant was apprehended and finally arraigned on February 13, 2024. The case was set for jury trial. On August 21, 2024 Appellant filed a Motion to Determine Competency of a Child Witness. On September 5, 2024 the court held a hearing on the motion and subsequently found M.L. competent to testify.

{¶4} On January 22, 2025 the case proceeded to jury trial. The state presented eight witnesses. M.L. testified that in 2023, on a date near her seventh birthday on March 17, she and her family were having a bonfire at their home. M.L. identified her address in Boardman, the names of her brothers and sister, her mother's full name, and that Appellant was there. (1/22/25 Tr., p. 251.) She noted that Appellant had tattoos and nose rings, and she identified him in court. (1/22/25 Tr., p. 256.) She believed that her stepfather was also at this gathering. (1/22/25 Tr., p. 263.) She testified that at some

point in the evening she, her brother J.W., and Appellant were left alone at the bonfire. (1/22/25 Tr., p. 252.)  She testified that Appellant put his hand down her pants and touched her private parts on both the front and back of her body.  (1/22/25 Tr., p. 253.) She said that when he touched her buttocks, Appellant jiggled it and said she was cute. (1/22/25 Tr., p. 253.)  Appellant told her not to tell anybody what had happened.  (1/22/25 Tr., p. 254.)  She testified that her brother was present and saw this occur.  (1/22/25 Tr., p. 254.)

**{¶5}**  The victim testified she told her mother about the incident a few months later when she saw Appellant's clothes in her mother's car and thought he was moving in with them.  (1/22/25 Tr., p. 255.)  She testified that she later told a social worker everything that happened.  (1/22/25 Tr., p. 255.)

**{¶6}**  J.W. testified that he was at a bonfire at his home around the time of M.L.'s birthday in 2023, and Appellant was also at the bonfire.  (1/22/25 Tr., p. 270.)  J.W. was eleven years old at the time.  (1/22/25 Tr., p. 274.)  At some point during the night Appellant, M.L., and he were left alone at the bonfire.  (1/22/25 Tr., p. 270.)  J.W. was gathering wood and saw Appellant slide his hand down M.L.'s pants and keep his hand there for a few seconds.  (1/22/25 Tr., p. 271.)  He testified that his stepfather was not present.  (1/22/25 Tr., p. 279.)

**{¶7}**  M.L.'s mother Krysten ("Mother") testified that Appellant, Appellant's girlfriend Amanda Mull, M.L., and her other three children, all attended a bonfire at her home days before M.L.'s birthday.  (1/22/25 Tr., p. 300.)  She and Amanda Mull left the bonfire and went into the house for several minutes to get drinks for the children.  (1/22/25 Tr., p. 303.)  During this time, Appellant remained outside with M.L.  (1/22/25 Tr., pp. 303,

317.) Approximately two months later, M.L. observed Appellant's clothes in Mother's car. M.L. "broke down" and told Mother that Appellant touched her inappropriately during the bonfire two months earlier. (1/22/25 Tr., pp. 307-308.) Mother contacted the Boardman Police Department and gave a statement to Officer Brenda Jones. Mother then took M.L. to the Child Advocacy Center and met with Detective Michael Sweeney.

{¶8} Amanda Mull testified that she and Appellant attended a bonfire at Mother's house in March of 2023 around the time of M.L.'s birthday. (1/22/25 Tr., p. 284.) At some point in the evening she went into the house with Mother to use the restroom and get more drinks. M.L. was left alone with Appellant at that time, and J.W. was also outside gathering wood.

{¶9} Social worker Courtney Wilson testified that she conducted a forensic interview of M.L. on June 1, 2023. She said M.L. explained that she was at a bonfire at her mother's house, and that her mother and Appellant were there. (1/22/25 Tr., pp. 360-361.) M.L. named Appellant as Tommy Spencer. Wilson testified that M.L. told her Appellant touched and rubbed her vagina with his hands both under and over her clothing, groped and jiggled her buttocks, told her that she was cute, and told M.L. not to tell her mother about the incident. (1/22/25 Tr., pp. 360-361.) M.L. demonstrated to Wilson that Appellant used a back and forth motion with his fingers on her vagina. (1/22/25 Tr., p. 362.) Wilson testified that M.L. did not appear to have been coached by anyone in providing the description of what happened to her. (1/22/25 Tr., p. 363.) She testified that most abused persons do not disclose the abuse immediately, because they are confused, afraid, and have not yet come to terms with what happened. (1/22/5 Tr., pp. 364-365.)

Case No. 25 MA 0012

**{¶10}** Detective Sweeney testified that on May 18, 2023, he was assigned to investigate a possible sexual assault by Appellant against the victim, M.L. Sweeney observed the diagnostic interview at the Child Advocacy Center performed by Courtney Wilson. During the interview, M.L. disclosed that Appellant sexually abused her while she was at the bonfire. Because Appellant did not penetrate M.L., Sweeney did not expect a medical finding of physical trauma to M.L.'s private areas. (1/22/25 Tr., p. 334.) Sweeney also interviewed J.W., who told him that Appellant gave M.L. a hug at the bonfire and put his hand down her pants. (1/22/5 Tr., p. 335.)

**{¶11}** Amanda McAllen was the nurse practitioner who examined M.L. She also observed the forensic interview of M.L. on June 1, 2023. McAllen concluded that M.L. had knowledge of sexual activity that a seven-year-old would not normally possess. For example, M.L. identified her private parts and identified her vagina as a "cootie-coo." (1/22/25 Tr., p. 389.) She described Appellant putting his hand under her pants and moving his hand in a circular motion on her vagina. She showed a motion of Appellant jiggling her buttocks. McAllen testified that Appellant told M.L. not to tell her mother what had happened or he would throw M.L.'s kittens out the window. (1/22/25 Tr., p. 390.) McAllen noted that delayed disclosure of abuse occurs 75 percent of the time in child victims. (1/22/25 Tr., p. 396.) McAllen made a finding of "highly concerning for sexual abuse." (1/22/25 Tr., p. 393.)

**{¶12}** At the end of the trial the case went to the jury for deliberation. On the same day, January 22, 2025, the jury found Appellant guilty of both counts of gross sexual imposition. Sentencing was held on February 5, 2025. The court sentenced Appellant to 60 months in prison on each count, to run consecutively. The parties engaged in a

Case No. 25 MA 0012

discussion with the judge concerning the appropriate sexual predator tier designation. Appellant had previously been convicted of attempted rape in Summit County in 2007. Appellant's counsel told the court that gross sexual imposition was a Tier II registration offense. He stated the attempted rape conviction should not increase the registration requirements to Tier III, because the offense occurred under Megan's Law prior to the effective date of the Adam Walsh Act registration requirements. The court designated Appellant as a Tier III Sex Offender/Child Victim Offender. The final judgment of conviction and sentence was filed on February 5, 2025. This timely appeal was filed on February 11, 2025. Appellant's four assignments of error will be treated out of order for ease in analysis.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ERRED IN FINDING THAT THE VICTIM WAS COMPETENT TO TESTIFY.

{¶13} Appellant argues that M.L. was not competent to testify because she was less than ten years old on the date of trial and because the trial judge did not engage in a proper voir dire of M.L. before finding her competent to testify. Appellant acknowledges that every person is competent to testify pursuant to Evid.R. 601(A), even an eight-year-old, unless disqualified by some other rule. Appellant notes that Evid.R. 601(B)(2) disqualifies a person who is incapable of understanding the duty of a witness to tell the truth. Appellant also notes that R.C. 2317.01 contains special competency requirements for children under ten: "All persons are competent witnesses except those of unsound mind and children under ten years of age who appear incapable of receiving just

<u>Case No. 25 MA 0012</u>

impressions of the facts and transactions respecting which they are examined, or of relating them truly."

**{¶14}** Appellant understands that the trial court conducted a voir dire of M.L. and determined that M.L. knew right from wrong. Appellant argues, though, that in order to meet the requirements of R.C. 2317.01, a court must also determine if a child under age ten is capable of receiving just impressions of the facts and transactions on which they will be examined and is able to relate that information accurately. Appellant cites *State v. Maxwell*, 2014-Ohio-1019 in support. Appellant contends that the trial court failed to make this additional determination, and that M.L. should not have been permitted to testify at trial.

**{¶15}** *Maxwell* dealt with a prior version of Evid.R. 601 which contained the presumption that children under ten years of age were not competent to testify. *State v. Simmons*, 2024-Ohio-3188, ¶ 22 (8th Dist.); *State v. Haywood*, 2023-Ohio-1121, ¶ 21 (7th Dist.). In contrast, the current rule "assumes competency of all witnesses unless they appear incapable of receiving just impressions of the facts and transactions respecting which they are examined." *Simmons* at ¶ 22. Under the current rule, a child "is presumed competent unless she demonstrates the inability to receive accurate impressions of fact or to observe acts about which she will testify; the inability to recollect those impressions or observations; the inability to communicate what she observed; her understanding of truth and falsity; and her appreciation of her responsibility to be truthful." *Id.* at ¶ 23, citing *State v. Azali*, 2023-Ohio-4643, ¶ 13 (8th Dist.). Despite the fact that *Maxwell* concerns an earlier version of Evid.R. 601 that no longer specifically restricts a child's competency to testify, courts continue to rely on its analysis as to what

Case No. 25 MA 0012

characteristics constitute competency. We also point out that *Maxwell* did not review or even mention R.C. 2317.01.

**{¶16}** A trial court's determination of whether a child is competent to testify under R.C. 2317.01 is reviewed for abuse of discretion. *State v. Haywood*, 2023-Ohio-1121, ¶ 21 (7th Dist.). "Abuse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *State v. Dixon*, 2013-Ohio-2951, ¶ 21 (7th Dist.). Competency of a child to testify is determined as of the time of trial, not the age of the child at the time the crime occurred. *State v. Clark*, 71 Ohio St.3d 466, 471 (1994).

**{¶17}** Under Evid.R. 601 and R.C. 2317.01, when an issue arises as to the competency of a child to testify, "the responsibility of the trial judge is to determine through questioning whether the child of tender years is capable of receiving just impressions of facts and events and to accurately relate them." *State v. Frazier*, 61 Ohio St.3d 247, 251 (1991). Although no longer presumptively required, trial judges generally conduct a voir dire of a child under ten years of age at the time of trial to determine his or her competency to testify. "In this voir dire the court must consider: (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful." *Haywood* at ¶ 21, citing *Maxwell* at ¶ 100. We reiterate that under the current law, we must start with the presumption that all persons are competent to testify, even children. *Simmons* at ¶ 23.

**{¶18}** M.L. was eight years old at the time of trial. The court held a competency hearing to determine M.L.'s ability to testify. The trial court found M.L. competent to testify and stated this in its journal entry of September 9, 2024. (9/5/24 Tr., p. 4.) Appellant did not object at trial to M.L.'s competency to testify. Appellee argues that a plain error standard should apply, because Appellant's counsel did not object to the use of M.L.'s testimony at trial. We have applied a plain error standard when the defendant fails to raise the issue of a child's competency to testify at the time the child is testifying at trial. *State v. Cole*, 2001 WL 541018 (7th Dist. May 18, 2001), at *2. "To establish plain error, a defendant must show that the error affected the outcome of the proceedings and that reversal is necessary to correct a manifest miscarriage of justice." *State v. McBride*, 2025-Ohio-1439, ¶ 7 (7th Dist.). A reviewing court should only find plain error in exceptional circumstances and only to correct a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶19}** Appellant's counsel and the prosecutor were present during the in camera voir dire of M.L. on September 5, 2024. The trial court posed a variety of questions to the child during the voir dire. The court asked M.L. why she was being asked to testify, and she replied that it was due to the "Tommy situation." (9/5/24 Tr., p. 2.) The court asked M.L. questions about her grade level in school, her teachers, and whether she understood right from wrong. (9/5/24 Tr., pp. 2-3.) M.L. responded that she was in third grade in an online school, her favorite class was math, and she identified her teachers. She responded that she knew right from wrong, knew that she must tell the truth in court, knew that she should not make up answers to questions, and should respond "I don't know" if she did not know the answer to a question. (9/5/24 Tr., pp. 3-4.)

Case No. 25 MA 0012

**{¶20}** There was nothing that occurred during voir dire or the trial which would have raised doubts about M.L.'s competency to testify. At trial she was able to state her correct age, and that she attended an online school. (1/21/25 Tr., p. 248.) She knew the names of her family members, her address, and Appellant's name. She described the locations of the people at the bonfire when the crime occurred. She remembered what she had to drink the night of the crime. She knew how long she was left alone with Appellant when the crime occurred. She remembered that Appellant had tattoos, even though they were covered at trial. (1/21/25 Tr., p. 257.) She remembered he had nose rings. She was able to describe in detail the fire pit where the bonfire took place. She was able to say "I don't know" when she did not know the answer to a question. (1/21/25 Tr., p. 251.) Her testimony indicated that she was able to observe the acts about which she would testify, recollect those observations, and communicate them in court.

**{¶21}** Appellant's arguments are not supported by the record. There is no error, and certainly not plain error, in the trial court's finding that M.L. was competent to testify, and the trial court did not abuse its discretion in this matter. Appellant's first assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NO. 3</u>

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITTAL UNDER CRIM R. 29.

<u>ASSIGNMENT OF ERROR NO. 4</u>

THE MANIFEST WEIGHT OF THE EVIDENCE DID NOT SUPPORT THE CONVICTIONS.

<u>Case No. 25 MA 0012</u>

**{¶22}** These two assignments are related, and will be treated together. Appellant contends that neither the sufficiency nor the manifest weight of the evidence supported his convictions. Sufficiency of the evidence and manifest weight of the evidence are related, but distinct legal concepts. "Sufficiency of the evidence is a legal question dealing with adequacy." *State v. Pepin-McCaffrey*, 2010-Ohio-617, ¶ 49 (7th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency is a term of art meaning that legal standard which is applied to determine whether a case may go to the jury or whether evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Draper*, 2009-Ohio-1023, ¶ 14 (7th Dist.), citing *State v. Robinson*, 162 Ohio St. 486 (1955). When reviewing a conviction for sufficiency of the evidence, an appellate court does not determine "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Rucci*, 2015-Ohio-1882, ¶ 14 (7th Dist.).

**{¶23}** In reviewing the sufficiency of the evidence, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 138 (1998). A conviction cannot be reversed on the grounds of sufficiency unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.*

**{¶24}** Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *Thompkins* at 387. It is not a question of mathematics, but depends on the overall effect of the evidence in inducing belief. *Id.* Weight of the evidence involves the state's burden of persuasion. *Id.* at 390. (Cook, J. concurring). An appellate court

reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Lang*, 2011-Ohio-4215, ¶ 220, citing *Thompkins* at 387. This discretionary power of an appellate court to reverse a conviction is to be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

{¶25} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 2011-Ohio-6524, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "The trier of fact is in the best position to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor." *State v. Vaughn*, 2022-Ohio-3615, ¶ 16 (7th Dist.), citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶26} To reverse a jury verdict as against the manifest weight of the evidence, a unanimous concurrence of all three appellate judges is required. *Thompkins* at 389; Ohio Const., art. IV, § 3.

{¶27} Appellant begins by asserting that the elements of gross sexual imposition are found in R.C. 2907.05(A)(4): "(A) No person shall have sexual contact with another; cause another to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: . . . (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person." The definition of "sexual contact" is found in R.C. 2907.01(B): " 'Sexual contact' means any touching of an erogenous zone of another,

including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

**{¶28}** Appellant argues that there was no evidence that he engaged in sexual contact with the victim. In support of his argument, however, Appellant ignores the testimony contained in the record.

**{¶29}** Appellee responds by citing M.L.'s testimony that Appellant inserted his hand into her pants, touched her vagina with his fingers, using a circular rubbing motion against her vagina. M.L. also testified that Appellant fondled her buttocks. M.L. told her mother that Appellant touched her inappropriately, and Mother testified to this at trial. M.L. told social worker Courtney Wilson and nurse practitioner Amanda McAllen that Appellant touched her vagina with his hand both under and over her clothing, and grabbed her buttocks and jiggled it. M.L. used the term "cootie-coo" to refer to her vagina. M.L. described the back and forth motion of Appellant's fingers on her vagina. M.L.'s brother testified that he saw Appellant put his hand down M.L.'s pants. Thus, there is no question that there is substantial evidence Appellant touched M.L.'s vagina and buttocks.

**{¶30}** The definition of "sexual contact" also includes the element that the illegal touching was done for the purpose of sexual arousal or gratification. The Ohio Revised Code does not define sexual arousal or gratification. Whether a defendant's contact with the victim was for the purpose of sexual arousal or gratification is a factual question to be resolved on the "type, nature, and circumstances surrounding the contact." *In re Anderson*, 116 Ohio App.3d 441, 444 (12th Dist. 1996). One's purpose can be shown through circumstantial evidence. *State v. Alanani*, 2024-Ohio-5660, ¶ 16 (1st Dist.), citing *State v. Henderson*, 2024-Ohio-2312, ¶ 26 (1st Dist.).

{¶31} The record reveals that Appellant told M.L. that she was "cute" while he was engaged in touching her erogenous zones. He engaged in the contact while the other adults at the bonfire had left the area and he was virtually alone with M.L., as her brother was nearby, but gathering wood. Appellant slid his hand underneath M.L.'s pants. Appellant moved his hand in a circular motion when touching M.L.'s vagina. Appellant grabbed M.L.'s buttocks and fondled it. All of these facts reflect Appellant had the purpose of sexual arousal or gratification. Appellant's argument regarding the sufficiency of the evidence is contradicted by the record.

{¶32} Regarding the manifest weight of the evidence, Appellant suggests that most of the evidence against him was poor and unreliable. He contends that there was no physical evidence of the crimes. Appellant argues that there was no agreement from the witnesses as to when the crime took place. No specific date was ever mentioned by any of the witnesses. The witnesses did not agree as the exact time of day the crime occurred, or how long M.L. was left alone with Appellant. He also argues that M.L. was unreliable, because she testified that her stepfather was present at the bonfire the night of the crime, but her brother testified that their stepfather was not there, and was actually incarcerated at the time. He also contends M.L. was unreliable because she did not report the crime until two months after it occurred.

{¶33} Appellant is correct that a few, minor, discrepancies as to the exact details of this matter exist. These minor discrepancies do not lead to the conclusion that a manifest miscarriage of justice took place. First, the state was not required to prove the exact date or time of the crime. The precise date and time are not material elements of the crime in this case, and "the failure to prove a temporal component of a crime is

generally inconsequential" to the verdict. *State v. Covington*, 2025-Ohio-1720, ¶ 30 (1st Dist.). M.L., J.W., and Amanda Mull all testified that the bonfire took place near M.L.'s birthday, which was March 17. Mother testified that the bonfire was a few days before M.L.'s birthday and it took place in the evening when it began to get dark. M.L. testified that the bonfire took place at 9 p.m. Amanda Mull testified it started at 4 p.m. and lasted until 11 p.m. There is nothing contradictory about any of this testimony.

{¶34} There were also some minor variations in the testimony regarding how long Appellant was alone with M.L. The victim testified she was alone with him about ten minutes. J.W. thought it was a few minutes. Amanda Mull thought that they were alone for about 15 to 20 minutes. Mother also thought it was a few minutes. There is consistency among the witnesses that the child was left virtually alone with Appellant for some period of time that evening, and the variations do not create any reason to question the credibility of any of the witnesses.

{¶35} Three witnesses agreed about which persons were present for the bonfire, while M.L. believed her stepfather was also there. Amanda Mull could neither confirm nor deny that M.L.'s stepfather was there. J.W. thought his stepfather was in prison at the time. Mother testified that he was not there. Although the details about who was present at the bonfire give context to the crime, the precise guest list of attendees at the bonfire also is not an element of the crime.

{¶36} As far as M.L.'s delay in reporting the crime is concerned, the witnesses provided multiple credible reasons why this occurred. The delay was just over two months, from March to May of 2023. Amanda McAllen testified that delayed disclosure of sexual crimes happens 75 percent of the time with children. Courtney Wilson testified

that most abused persons do not disclose the abuse immediately, because they are confused, afraid, and have not yet come to terms with what happened. Mother testified that on May 18, 2023, M.L. saw Appellant's clothes in Mother's car. The sight of these clothes caused M.L. to become emotional, and talk about the crime that happened on the night of the bonfire. M.L. also testified that Appellant threatened her not to talk about the crime. Thus, the record contains several credible reasons to explain why M.L. waited two months to report the crime.

{¶37} The record also shows M.L. was consistent in her description of what transpired the night of the crime. She gave the same description to her mother, to Courtney Wilson, to Amanda McAllen, and at trial. Her description is consistent with her brother's testimony at trial. She described details that would not be generally known by a seven-year-old, but were consistent with the experience of a child who had been subjected to a crime of a sexual nature.

{¶38} This is not a case in which a single child witness testified about a sexual assault and no other corroborating evidence was offered. Five witnesses corroborated various aspects of the victim's testimony, and did so with a high degree of consistency. Additionally, no one offered evidence that the crime never took place or that M.L. was mistaken as to what she experienced. There was also no dispute that Appellant was at the bonfire and was the person that M.L. described as the perpetrator of the crime. Ultimately, it was up to the jury to determine the credibility of each witness and their testimony, and the jury believed M.L.

{¶39} This record supports the verdict in both the sufficiency and manifest weight of the evidence. Appellant's third and fourth assignments of error are overruled.

Case No. 25 MA 0012

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED AS A MATTER OF LAW IN CLASSIFYING DEFENDANT-APPELLANT AS A TIER III OFFENDER.

**{¶40}** Appellant contends that his sexual offender classification was improperly elevated to the level of a Tier III due to an attempted rape he committed in 2007. He believes this earlier crime was subject to Megan's Law, and not the Adam Walsh Act, and should not have been used to enhance the requirements of the Adam Walsh Act in the current crime. In order to understand Appellant's contention, we must review the history of this issue. Under the terms of Ohio's version of the Adam Walsh Act, codified in R.C. Chap. 2950 and effective January 1, 2008, a person convicted of specifically listed sexual offenses is required to be classified as Tier I, Tier II, or Tier III sexual offender as set forth in the act. Prior to the enactment of this Act, sexual offender classifications occurred under the authority of Megan's Law, R.C. 2950 et al., effective January 1, 1997. Megan's Law was a risk-based classification method that used an individual assessment by the trial judge of the offender's likelihood to reoffend. *State v. Battistelli*, 2009-Ohio-4796, ¶ 8 (9th Dist.). In contrast, the sex offender categories under the Adam Walsh Act are based on the specific crimes committed, and the tier designations are applied as a matter of law. *Id.* Although the new Adam Walsh system was intended to be retroactive prior to its effective date of January 1, 2008, the Ohio Supreme Court determined that the retroactive nature of the act was unconstitutional in some aspects. *State v. Williams*, 2011-Ohio-3374, at syllabus.

Case No. 25 MA 0012

{¶41} R.C. 2950.01(G)(1)(j) requires that an offender be classified as a Tier III sex offender if he or she is convicted of any sexually oriented offense, and had previously been convicted of a sexually oriented offense for which the offender was classified as a Tier II or Tier III sexual offender. Although gross sexual imposition is a Tier II offense, Appellant was convicted of rape in 2007. That offense is classified as a Tier III offense under the Adam Walsh Act, and the trial court would have been required to classify Appellant as a Tier III sexual offender. Appellant argues that, as his rape conviction occurred under Megan's Law before the Adam Walsh Act took effect, his rape conviction was not subject to the terms of the Adam Walsh Act. He argues that he cannot be retroactively penalized as a prior Tier III offender because the tier system did not exist when he committed the attempted rape. Thus, he believes the trial court should not have taken the attempted rape conviction into consideration for classification purposes and should have classified him as a Tier II sexual offender as though the prior crime never took place.

{¶42} Appellee responds that the Adam Walsh Act required sex offenders who committed their offenses prior to December 1, 2007 be reclassified under the new three-tiered system. R.C. 2950.031(A); R.C. 2950.032(A). The Act provided a right to a hearing to an offender subject to reclassification upon the filing of a petition within 60 days of receiving notice of the reclassification. R.C. 2950.031(E); R.C. 2950.032(E). Although the Ohio Supreme Court ruled that certain provisions of the Adam Walsh Act were unconstitutional, it left intact the provisions regarding the requirement to file a petition to challenge any improper classification or reclassification. *State v. Palmer*, 2012-Ohio-580, ¶ 19, referencing *State v. Bodyke,* 2010-Ohio-2424, ¶ 65.

Case No. 25 MA 0012

**{¶43}** The designation of an offender as a Tier I, II, or III sexual offender under the Adam Walsh Act is generally automatic as a matter of law, and therefore, is reviewed de novo on appeal as it involves an interpretation of law. *State v. Thomas*, 2016-Ohio-501, ¶ 5 (1st Dist.).

**{¶44}** Appellant was convicted of attempted rape on October 19, 2007 in *State v. Spencer*, Summit C.P. No. 07-08-2579. In that case, the final judgment entry ordered Appellant to register as a Tier III child victim offender. Appellant stipulated to the Tier III Adam Walsh Act classification, and did not file a petition seeking reclassification, nor did he claim any error in his classification. (10/19/07 J.E.). There is no indication that the attempted rape conviction was ever appealed or that the Tier III designation was challenged prior to sentencing in the instant case.

**{¶45}** Pursuant to the current statute, an offender who commits an offense of gross sexual imposition is required to register as a Tier II child victim offender. R.C. 2950.01(F)(1)(d). If an offender was previously classified as a Tier II or Tier III child victim offender and is subsequently convicted of a Tier II offense, he must be classified as a Tier III child victim offender. R.C. 2950.01(G)(2). A criminal offender may waive any right to a hearing or other due process and stipulate to a sex offender classification. *State v. Rogers*, 2002-Ohio-1150, *3 (7th Dist.). Appellant stipulated that, due to his prior conviction for attempted rape, he was a Tier III child victim offender. He never challenged this designation, and certainly did not avail himself of the statutory option to file a petition challenging his classification within 60 days of being notified of the Tier III designation. Therefore, the trial court in the instant case correctly designated Appellant as a Tier III Sex Offender/Child Victim Offender based on his current convictions and considering his

prior conviction for attempted rape. Appellant's second assignment of error is without merit and is overruled.

## Conclusion

{¶46} Appellant raises four arguments in his appeal of his convictions for two counts of gross sexual imposition. Appellant argues the victim was incompetent to testify because she was under ten years old at the time of trial. The trial court held a voir dire of the child to determine her competence to testify, and the court's finding of competence complied with Evid.R. 601 and R.C. 2317.01. Appellant's argument is not supported by the record. Appellant also argues that the evidence was insufficient to convict him and his conviction was against the manifest weight of the evidence. All of the state's witnesses were consistent in explaining how the crime was committed and the circumstances surrounding the crime. The victim herself testified as to the sexual assault. This record fully supports both the sufficiency and weight of the evidence. Appellant argues finally that he should have been designated a Tier II sexual offender rather than a Tier III sexual offender. He contends that the trial court improperly used a prior conviction for attempted rape from 2007 to increase the designation to Tier III. As his prior conviction occurred under the authority of Megan's Law, he believes it was not subject to the classification requirement of the Adam Walsh Act. The record shows that Appellant stipulated to a Tier III Adam Walsh designation in the prior attempted rape conviction, and the presence of a prior Tier III crime elevated the designation of gross sexual imposition to a Tier III classification for his current crimes. None of Appellant's assignments of error have merit and the judgment of the trial court is affirmed.

Case No. 25 MA 0012

Robb, P.J. concurs.

Hanni, J. concurs.

[Cite as *State v. Spencer*, 2025-Ohio-3268.]

---

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**